**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number: 26-cr-324 (RJL)** |
| **KEVIN MONTGOMERY,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, respectfully submits this Memorandum in Aid of Sentencing to assist the Court in sentencing the defendant, Kevin Montgomery, who pled guilty on June 9, 2026, to one count of Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(a). For reasons set forth below and consistent with the plea agreement in this case, the United States recommends a sentence of 8 months' incarceration, followed by 10 years of supervised release.

### I. Factual and Procedural Background

The defendant was initially required to register as a sex offender under the D.C. Sex Offender Registration Act of 1999 because he was under supervision after July 11, 2000, following his 1997 and 1998 convictions for sex offenses in the District of Columbia. He completed his initial registration in D.C. with the DC Sex Offender Registry ("SOR") on July 20, 2001, and was classified as a Class A registrant, requiring lifetime registration and quarterly verification updates. The defendant repeatedly signed sex offender registration forms notifying him that he had a duty to report, among other things, changes of home, work, or school address.

Mr. Montgomery was subsequently convicted of two additional SORNA registration offenses on August 5, 2010 (Misdemeanor Sexual Abuse), and on June 8, 2012 (Attempted First Degree Sexual Abuse). At his sentencing, the defendant was again informed that he was required to register as a sex offender for life.

Upon his release from prison in 2025, Mr. Montgomery completed a new initial registration, and he was again instructed to report any changes in his registration information to the D.C. SOR within 72 hours of the change. On January 15, 2025, April 14, 2025, and July 7, 2025, the defendant completed quarterly verification updates and provided a home address of 108 Atlantic Street SE #302, Washington, D.C.

In August 2025, U.S. Marshals assisted the Court Servicers and Offender Supervision Agency ("CSOSA") by completing a compliance check operation and found the residence reported by the defendant at 108 Atlantic Street SE was boarded up. On August 29, 2025, Deputy U.S. Marshal, William Straw and a CSOSA Officer attempted to verify the defendant's home address. The CSO was unable to contact Mr. Montgomery because the apartment door was boarded up and the apartment was unoccupied. On September 2, 2025, DUSM Straw contacted Bailey Real Estate Holdings, the management company for the Atlantic Street apartment. The property manager indicated that apartment 302 has been vacant since May 30, 2025. The manager further stated that Mr. Montgomery was never a lease holder of the apartment on Atlantic Street. Rather, the apartment was leased to another man from 2017 until his death on July 4, 2024. A new tenant began living in the apartment on November 1, 2024, and moved out on May 30, 2025.

On September 8, 2025, DUSM Straw conducted a records search for Mr. Montgomery's listed phone number, (202) 840-XXXX. Records showed that the defendant had called the Prince George's County, Maryland Public Communications 911 Center several times from this number, including reporting two incidents occurring at an address on Gunter Street in Capitol Heights, Maryland, on February 25, 2023, and February 7, 2025. Records further indicated that Mr. Montgomery was living at this address with Malinda Baldwin. Ms. Baldwin died on January 17, 2025.

On September 16, 2025, DUSM Straw interviewed Ms. Baldwin's sister and brother-in-law, W-1 and W-2. W-1 and W-2 reported that Mr. Montgomery had been in a relationship with Ms. Baldwin and that the defendant had been living at Ms. Baldwin's home on Gunther Street in Capitol Heights, Maryland, until her death on January 17, 2025. They stated that Baldwin had met Mr. Montgomery on a dating site

after her husband died. When Mr. Montgomery met Ms. Baldwin, he had been living at 108 Atlantic Street SE #302 in Washington, D.C. with another man who was the leaseholder of that apartment. Mr. Montgomery moved in with Ms. Baldwin in an apartment in Beltsville, Maryland in approximately 2020, and they lived at that location together for approximately two years. Ms. Baldwin purchased her home on Gunter Street on December 12, 2022, and subsequently, Ms. Baldwin and Mr. Montgomery began living together at this address, along with Baldwin's two disabled adult sons.

W-1 said that her sister's health began to decline in 2024, and she ultimately passed away in 2025. Before Baldwin died, Mr. Montgomery asked Ms. Baldwin to change the beneficiary of her life insurance policy so that he would receive the payments instead of her disabled sons. Upon her death, Mr. Montgomery changed the locks on Ms. Baldwin's home, preventing Ms. Baldwin's sons from entering the home. W-1 and W-2 obtained a protective order from Prince George's County Maryland against Mr. Montgomery. W-1 and W-2 further stated that Ms. Baldwin purchased a 2021 Dodge Pro Master van for Mr. Montgomery. DUSM Straw conducted a search of Maryland motor vehicle records, which showed that Mr. Montgomery had a Maryland ID card, and that he was the listed co-owner of a 2021 Dodge Pro Master Van, VIN 3C6LRVDG0ME517732 with MD tag 8FC3541. Ms. Baldwin was listed at the co-owner. Mr. Montgomery did not list the van with D.C. SOR.

DUSM Straw conducted a search in tag reader systems for the van's tag number and found that the van had been parking in Maryland on Gunther Street since early 2025. The van was seen parking near 4807 Iowa Avenue NW, Washington, D.C. as recently as September 6, 2025.

Montgomery failed to register upon moving from his registration address on Atlantic Avenue.

## II. Discussion and Recommendation

### a. Generally Applicable Legal Principles

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.") Then, after giving both parties an opportunity to argue for an appropriate sentence, the district court should consider each of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

Here, the United States recommends a sentence of 8 months of incarceration to be followed by ten years of supervised release. The recommended sentence reflects the seriousness of the defendant's conduct; acknowledges the danger that the defendant poses to the community; and ensures that the defendant will be monitored for a significant period upon his release, thus protecting the community from future harm.

**b. Statutory Penalties**

The defendant now faces a sentence on one count of Failure to Register as a Sex Offender in violation of 18 U.S.C. § 2250(a). As noted by the U.S. Probation Office, the defendant faces a maximum sentence of 10 years of imprisonment. *See* PSR, ¶ 140.

**c. The Sentencing Guidelines Calculation**

The Government agrees with the Sentencing Guidelines calculation set forth in the Pre-Sentence Investigation Report ("PSR") and acknowledge the error in the Guidelines calculation estimated by the parties in the plea agreement letter. *See* PSR, ¶ 5. According to the PSR, the U.S. Probation Office

calculated the defendant's adjusted offense level under the Sentencing Guidelines as follows.

Failure to Register as a Sex Offender:

| | | |
|---|---|---|
| U.S.S.G. § 2A3.5 (a)(1) | Base Offense Level | 16 |
| Specific Offense Characteristics | | |
| U.S.S.G. § 2A3.5(b)(2) | correcting failure to register | -3 |
| U.S.S.G. § 3E1.1(a) | Acceptance of Responsibility | -2 |
| | Total | 11 |

*See* PSR at ¶ ¶ 22-32.

The U.S. Probation Office calculated the defendant's criminal history as a category II, which is not disputed. PSR at ¶57. Accordingly, the defendant's corresponding Guidelines range is 10-16 months incarceration, and his fine range is $4,000 to $40,000. PSR at ¶157.

**d. The § 3553(a) Factors Support a Sentence of 8 Months of Incarceration.**

**(i) Nature and Circumstances of the Offense**

In 1996, Congress adopted Megan's Law after "Megan Nicole Kanka, who was 7 years old, was abducted, sexually assaulted, and murdered in 1994, in the State of New Jersey by a violent predator living across the street from her home. Unbeknownst to Megan Kanka and her family, he had been convicted previously of a sex offense against a child." International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Though Advanced Notification of Traveling Sex Offenders, PL 114-119, February 8, 2016, 130 Stat 15. The goal, according to Congress was to "protect children by identifying the whereabouts of sex offenders and providing the means to monitor their activities." *Id.* In 2006, the Adam Walsh Child Protection and Safety Act of 2006 was passed to "protect children and the public at large by establishing a comprehensive national system for the registration and notification." *Id.*

The defendant's criminal conduct involves his willful failure to register his address as required by SORNA. The defendant knowingly gave a false address to D.C. Sex Offender Registration authorities for several years and failed to register his address with Maryland authorities despite living in that state since approximately 2020. The defendant was clearly aware of his obligation to register, as he was a lifetime

registrant since 2001, and has been repeatedly told that he needs to update his home and work addresses with the registry within 72 hours of any change. The defendant's actions demonstrate profound disrespect for the law and seriously undercut the purpose of SORNA which is to ensure that the public is aware of sex offenders in their area and to allow concerned citizens the opportunity to protect themselves from potential harm. As a Tier III Sex Offender with multiple conviction for violent sexual assaults, Mr. Montgomery is precisely the type of offender that SORNA's registration requirements are designed to monitor. The Nature and Circumstances of the offense favor a sentence of incarceration followed by a significant period of supervised release.

**(ii) History and Characteristics of the Defendant**

Mr. Montgomery has a long history of extremely harmful criminal behavior and non-compliance with court supervision, which also favors a sentence of incarceration followed by a significant period of supervised release. Mr. Montgomery has twenty-three prior criminal convictions, including five violent sexual assaults. *See* PSR at ¶ ¶ 34-57. In 1996, when he was 31 years old, Mr. Montgomery was convicted of Assault and Battery in Maryland, after he struck a woman in the back of the head while she was working at a tennis facility and demanded that she perform a sexual act. *See* PSR ¶ 43. The defendant displayed a knife, removed the victim' clothing and then sexually assaulted her. *Id.* In 1998, when the defendant was thirty-three years old, he choked a woman until she had difficulty breathing and then repeatedly sexually assaulted her. *See* PSR ¶ 45. In 2009, when the defendant was forty-four years old, he threatened a woman with a machete and sexually assaulted her. *See* PSR ¶ 53. In 2012, when he was forty-seven years old, the defendant choked and strangled a woman and sexually assaulted her. *See* PSR ¶ 56. The defendant's criminal history is extremely serious and demonstrates that he is a danger to the community, and particularly to women. Moreover, it appears that despite his long criminal history and his multiple convictions, the defendant still has not taken responsibility for his actions and acknowledge the harm that he has caused. The PSR notes that "when confronted with his sexual offense history, the defendant denied ever forcing a woman to engage in sexual activity against her will." *See* PSR ¶ 119.

In addition, the defendant's criminal history, the defendant has demonstrated other disturbing

characteristics, which reveal deceptive and predatory behavior. In the PSR, Mr. Montgomery refers to Melinda Baldin as his "longtime companion" and claims that he supported her financially and was "experiencing emotional difficulty" after her passing. *See* PSR ¶ 118. However, this is not consistent with the information that W-1 and W-2 provided to investigators. Information provided by W-1 and W-2 indicated that the defendant exploited Ms. Baldwin, after meeting her on a mobile dating application following the death of her husband. Mr. Montgomery lived in a home that Ms. Baldwin owned, and after her health began to decline in 2024, Mr. Montgomery asked Ms. Baldwin to change the beneficiary of her life insurance policy so that he would receive the payments instead of her disabled adult sons. Upon her death, Mr. Montgomery changed the locks on Ms. Baldwin's home, preventing Ms. Baldwin's sons from entering the home. W-1 and W-2 obtained a protective order from Prince George's County Maryland against Mr. Montgomery in order to regain access to the property on behalf of their nephews.

Mr. Montgomery's history and characteristics reveal a person who has habitually exploited and victimized vulnerable people and shown no respect for the law. This factor also favors a sentence of incarceration, followed by a significant period of supervised release.

**(iii) Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense**

The government's recommended sentence in this case would promote respect for the law and provide just punishment for Mr. Montgomery's offense. 18 U.S.C. § 3553(a)(2)(A). As the Eleventh Circuit explained in *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010):

> This purpose--essentially the "just des[s]erts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.

The requirement to register as a sex offender is borne out of efforts to keep community members safe. When those requirements are ignored, it undermines community safety. In Mr. Montgomery's case, his choice not to update his address for several years demonstrates a lack of respect for the law and a undermined public safety. The government submits that its recommended sentence of 8 months

incarceration followed by 10 years of supervised release reflects the danger inherent in failure to register and provides just punishment for the offense.

**(iv) Adequate Deterrence and Protection of the Public**

The Sex Offender Registration and Notification Act was created to ensure community safety by ensuring that dangerous sex offenders are required to register critical information, including their workplace, home, and any international travel. Mr. Montgomery's inactions here are evidence of Mr. Montgomery's unwillingness or inability to abide by court orders.

Mr. Montgomery's registration requirement is critical to community safety. As Courts have regularly found, the rate of recidivism is high among sex offenders, necessitating strict compliance with registration requirements to ensure safety of the community. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault").

Given Mr. Montgomery's above-average risk of reoffending, the government's recommended sentence is necessary to protect the public from further crimes of this defendant and to ensure that the community (and potential future offenders) know that violations of sex offender registration requirements are taken seriously due to the potential for harm when non-compliance occurs.

**v. Providing the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

The recommended supervision period of 10 years is necessary to meet the defendant's need for correctional treatment. Here, the defendant has a demonstrated history of non-compliance and reoffending. A longer period of supervised release will ensure that the defendant has support while

engaging in therapeutic and other intervention designed to reduce the likelihood of the defendant reoffending.

## CONCLUSION

For the reasons addressed above, the United States respectfully recommends that the defendant be sentenced to a term of incarceration of 8 months, followed by 10 years of supervised release. Such a sentence is "sufficient, but not greater than necessary to comply with the purposes" of sentencing and it contemplates not only the relevant guidelines range set forth for this offense, but also adequately reflects the factors as outlined in 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE F. PIRRO
UNITED STATES ATTORNEY

By: */s/ Karen Shinskie*
Karen Shinskie
DC Bar #1023004
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Phone: (202) 730-6878